The **SLICK CORPORATION,**
a corporation
v.
The **UNITED STATES.**
No. 316–66.
United States Court of Claims.

June 14, 1968.

Robert J. Corber, Washington, D. C., attorney of record for plaintiff. Steptoe & Johnson, Washington, D. C., of counsel.

John Charles Ranney, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

OPINION

NICHOLS, Judge.

The case is at issue on a stipulation. Our commissioner has returned it to the court, holding that there is no issue of

---

fact requiring a trial or report. See Rules 58(b) (2), 65(a).

The plaintiff corporation was a scheduled air carrier of property and mail in interstate commerce, certified by the Civil Aeronautics Board. Among its air transportation activities plaintiff chartered aircraft to users for the transportation of property and persons. These charters were subject to regulation of the Civil Aeronautics Board and the requirements of the Federal Aviation Act of 1958, 72 Stat. 731, 49 U.S.C. §§ 1301–1542.

At various times during the years 1959 and 1960, plaintiff entered into contracts with the United States for the air transportation of Government cargoes and passengers from various points in the United States to various points within as well as without the United States. The plaintiff thereafter furnished the transportation on Government bills of lading, in the case of Government cargoes, and on Civil Aircraft Certificates in the case of passengers.

Pursuant to an Invitation to Bid designated 11–26–59–12, plaintiff and defendant entered into Contract AF 11 (626)–172, dated August 23, 1959. This contract covered the transportation of cargoes and passengers across the Pacific Ocean, but the dispute relates only to cargo. Upon completion of the transportation service performed pursuant to the contract, plaintiff submitted bills on public voucher forms for the charges thereon in accordance with the practices and regulations prescribed by the Comptroller General for the settlement of transportation accounts with the United States. Payments were made on said bills by the disbursing officers and accounting officers of the United States according to the rates and charges claimed by the plaintiff. Thereafter, the United States, through its General Accounting Office, made deductions on account of the original transportation movements from bills of the plaintiff rendered for other and different services not here in dispute. This action was taken in accordance with the provisions of 54 Stat. 955, as amend-ed, 72 Stat. 861, 49 U.S.C. § 66. Though plaintiff's original petition raised three issues, the parties have stipulated that but one now remains. They have also stipulated that if defendant prevails on that issue plaintiff is due only $1,467.52, but that if plaintiff prevails it is entitled to $10,387.06.

A schedule in the Invitation For Bids stated that the Government required the transportation of unspecified tonnages of cargo per month. Bidders were to guarantee the transportation of a specified tonnage per month and were to set out in their bids a "minimum ACL" which was to serve as the basis for their guarantee. "Minimum ACL" was defined as "Available Cabin Load the bidder guarantees to move on each flight." The Invitation required the bidder to base its ACL on an average cargo density. The clause (hereinafter called clause 2) provided:

2. Cargo Density: Average guaranteed available cabin load must be based upon cargo at average density of 10 pounds per cubic foot. Such guarantee must be realistically based upon usable cubic feet of space available for loading and properly tying down cargo to be transported.

This clause 2 was in an entirely different part of the contract from that prescribing the rates, and there were no cross-references in either direction.

As part of the TERMS AND CONDITIONS OF THE INVITATION FOR BIDS, paragraph 13a, thereof, as amended, provided:

AVAILABLE CABIN LOAD. In submitting available cabin load (ACL), the bidder will indicate a minimum and a maximum ACL for each type aircraft to be utilized. The minimum ACL shall be considered as contractor's guarantee and the Government's guarantee *as provided in Part V* of the schedule of this Invitation. Should carrier offer any ACL in excess of the minimum, the Government may, without obligation to do so, supply traffic to fill any portion of said offer and pay for the actual amount transported. Any traffic thus

transported in excess of the carrier's minimum ACL shall be in addition to, and shall not reduce, the Government's guarantee set forth in PART V of the schedule of this Invitation unless otherwise agreed to by the Government and the carrier. * * * (Emphasis supplied)

And, the guarantees of the parties were set forth as follows:

## PART V—GUARANTEE OF THE PARTIES

### A. Guarantee of the Contractor

1. The Contractor guarantees to transport the total number of passengers and tons of cargo allocated to the Contractor pursuant to this contract * * *. In the event the total ·tonnage of cargo is not transported as aforesaid, the Contractor will transport the deficit tonnage at no additional cost to the Government [sic] * * *

\* \* \* \* \* \*

### C. Guarantee of the Government

1. The Government guarantees to furnish the tons of cargo per month and number of passengers per month for each item in accordance with the award. Further, the Government guarantees to furnish this traffic to the Contractor on an individual flight basis, in an amount equal to the minimum available cabin load specified by the Contractor * * *

\* \* \* \* \* \*

3. In the event the Government furnishes traffic on any flight in an amount less than the minimum available cabin load specified by the Contractor and the Government is, by its guarantee set forth in paragraph C1 above, obligated to furnish traffic in an amount equal to such minimum ACL, the Government shall pay to the Contractor for such flight an amount equal to the minimum ACL multiplied by the price per ton delivered or price per passenger delivered, as applicable.

Under Contract AF 11(626)–172, as awarded to the plaintiff, plaintiff guaranteed to transport 296.25 tons of cargo per month for three contract quarters and 304 tons of cargo per month during another contract quarter. The rate for cargo was $1,424.50 per ton. The maximum ACL per plane was 21 tons, the minimum ACL 19.75 or 19 tons. There were no rates on any other measure than tons, and it is not disputed that "tons" here meant weight and not, as with merchant ships, cubic capacity. The type of plane was specified and plaintiff was to furnish a "plan drawing" setting forth loading arrangements for cargo.

The issue before us, as stipulated by the parties, is whether the plaintiff's charges may be based on the offered weight capacity of the aircraft, rather than the minimum ACL or actual weight of the cargo, when the bulky nature of the cargo causes the cubic capacity of the aircraft to be filled before the offered weight capacity of the aircraft is reached. The dispute arose from instances where the Government furnished cargo of such slight density that the airplane "bulked out", that is, the space in the airplane filled up and no more cargo could be loaded, before the minimum ACL tonnage was reached. The Government contends that in this situation it is obligated to pay only for the minimum ACL, i. e., for 19 or 19.75 tons. The plaintiff's position is that the contract provided for payment on the basis of cargo having a density of at least 10 pounds per cubic foot and that if the cargo was of less density the defendant was obligated to pay for the space taken up by the cargo since the contract requires payment for capacity used in excess of the minimum ACL. Thus, says plaintiff, when the light density of the cargo caused the cubic capacity of the airplane to be filled up before weight limits (at 10 pounds per cubic foot) could be loaded, the defendant used capacity in excess of the minimum ACL (i. e., used the offered ACL) and payment should be made accordingly.

Looking to the guarantees of the parties (see PART V, supra,) we decide that the plaintiff's charges, when the airplane "bulks out" at less than the minimum ACL, cannot be based on the offered weight capacity of the aircraft, but instead must be restricted to the minimum ACL tonnage (or the actual weight of the cargo when greater).

How do the parties use the contract to support their positions? The plaintiff says it prescribed a standard of cargo density (10 pounds per cubic foot), this standard "reflect[ing] the intent to base payment on the alternative measures of weight (tonnage) or space (cubic foot) whichever defined the capacity of the aircraft actually used." Defendant submits weight was the sole measure of its obligation: either the tonnage equivalent of the minimum ACL or the actual weight of the cargo when greater. In making its allocation of cargo to be shipped to plaintiff's contract, the Government relied on the plaintiff's bid. This bid, as required by the Invitation, was expressed in terms of tons. Though plaintiff had to take into account the density factor of cargo in making its bid, it was only in that the plane had to offer a cubic foot of space for each average ten pounds of load. The contract did not speak in terms of "capacity." Plaintiff's sole guarantee was to transport that cargo tonnage allocated by the Government to the contract in reliance on the plaintiff's bid, a bid expressed in tons—a weight factor.

What were the Government's obligations? The Government "guarantee[d] to furnish the tons of cargo per month * * * in accordance with the award." and to furnish that tonnage "on an individual flight basis * * *." The Government also obligated itself to furnish cargo at least equal to the minimum ACL the plaintiff bid it would bear. But, most significantly, there was no express obligation on the Government to furnish cargo of a specific density, and nothing was said in clause 2 or elsewhere as to what would happen if the density was over or under 10 pounds per cubic foot.

All the contract required it to do was supply the awarded tonnage.

Plaintiff, at the time it was bidding on the contract, without complaint and in accordance with the Invitation, stated its transport ability in terms of tons. It did not state it as tons or cubic feet, or cubic feet alone.

As part of the services to be furnished under the contract, the plaintiff agreed to:

> * * * furnish facilities on each flight for the transportation of two (2) Government personnel * · * *. Where personnel are transported pursuant to this provision, the contractor's guaranteed available cabin load will be credited with the weight of cargo displaced on the basis of weight of passenger(s) and baggage transported.

There was no specification that the guaranteed ACL would be credited with the weight *or* space of the cargo displaced on the basis of the weight *or* space of the passengers and baggage transported. It would have been necessary to provide this if in any case the freight earned was to depend in whole or in part upon the volume carried.

Significantly, plaintiff in its brief refers us to various cases involving transport by water. We think they are irrelevant. Plaintiff's theory does indeed embrace the same concept as the practice in ocean transport known as "ship's option." Ocean carriers will "state a rate on both a weight unit and a measurement [space] unit. Whichever of the two bases would result in the higher freight charge on a given shipment is the basis adopted for that shipment. * * * No option, in the usual sense of the term is actually exercised, for the determination of the freight charge is a matter of arithmetic." Grossman, Ocean Freight Rates 9 (1956). "Ship's option" being a common operating practice, its incorporation in the contract in issue would not have been something totally new. It would have been new only in that it is not a term employed in connection with air transportation, Grossman, supra, at 10, and its

inclusion here would have been a departure from normal air transport practice. We think if the contract had been meant to embody the "ship's option" theory it would have clearly so specified. That it did not do so can only show the fallacy of the plaintiff's argument. This case being before us on stipulated facts, nothing is offered in the stipulation or elsewhere to show a usage or custom in the air transport industry indicating that the words used by our parties in the contract may mean something different from the common meaning. This they would have had to do to sustain plaintiff's claim.

Plaintiff invokes this court's application of the rule construing against the Government contracts the Government has drafted, but that rule applies only when the contract was truly ambiguous and the contractor's construction was reasonable. J. A. Jones Construction Co. v. United States, 395 F.2d 783, 184 Ct.Cl. —— (1968).

Clause 2 must be read in light of the fact that plaintiff was asked to identify the types of aircraft it would use and to furnish a "plan drawing." It did so. The Government, therefore, must have known the cubic capacity of the aircraft it was chartering. The effect of clause 2 was to put a ceiling on the maximum ACL the plaintiff could propose, notwithstanding what dead weight the plane could lift off the ground. Suppose, e. g., that plaintiff had a plane that could take off with 30 tons. It could not offer that figure as minimum or maximum ACL unless it had cubic capacity to correspond according to the formula clause 2 prescribed. But this has nothing to do with rates, which are set forth in an entirely different part of the contract without cross-references.

A reading of the contract shows that weight of cargo is always expressed to be the sole measure of compensation, except that plaintiff is protected if the Government offers light cargo such as feathers or corn flakes. In that event the minimum ACL is the measure of compensation. Here it would mean that the price for 19.75 or 19 tons, depending on the season, is the floor below which the compensation for making a flight cannot fall, however light the cargo is in fact. There is nothing to show this is an anomalous or absurd result. We deem we know judicially that, with a lesser weight to carry, even though the cargo space is filled, an aircraft is easier to get in the air, easier to land, and goes to its destination faster with less expenditure of fuel. If this were not so here, it should have been demonstrated by evidence or in the stipulation. There is nothing to show either that the space defendant used for light cargo above that required for the minimum ACL converted per clause 2, would have been of any use or value to plaintiff if defendant had not used it. It could not have been used for private cargo.

While the plaintiff says that clause 2 reflects an obligation on the Government to pay for cubic space, it never explains with any clarity how this is stated in the contract language. Actually, to stay in the ring at all, plaintiff would have had to revise its contention. It would have had to interpret clause 2 as a specification that the offered cargo would average a density of 10 pounds per cubic foot. Then, if cargo of a different average density were offered it would arguably be a change. It is however, too late for that technique in this litigation. The stipulated facts do not suffice for it. The plaintiff would have had to take into consideration cases, which no doubt occurred, where the average density of an aircraft's cargo was over 10 pounds. Then the Government would be entitled to an equitable adjustment in its favor for all the extra vacant space left in the plane, which by plaintiff's theory is such a valuable commodity. Allowance for this would have to be made in offset for the cases of density under 10 pounds. It certainly would require a showing that any kind of equitable adjustment for plaintiff was indicated, which showing is completely absent here. Plaintiff has in fact submitted nothing to show that its claim has any equity whatever.

In accordance with the foregoing and with the parties' stipulations, judgment is awarded the plaintiff for $1,467.52, and its petition as to the remaining claims therein is dismissed.